UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESUS NEVAREZ,<br><br>    Plaintiff,<br><br>v.<br><br>MIDWEST GOODS, INC. d/b/a<br>MIDWEST DISTRIBUTION ILLINOIS,<br><br>    Defendant. | Case No.: 1:18-cv-04715<br><br>**COMPLAINT**<br><br>**JURY DEMANDED** |

NOW COMES the Plaintiff, JESUS NEVAREZ, by and through his attorneys, and for his Complaint against the Defendant, MIDWEST GOODS, INC. d/b/a MIDWEST DISTRIBUTION ILLINOIS, Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages and equitable and injunctive relief for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1, *et seq.,* and Illinois common law covering retaliatory discharge.

2. This court has jurisdiction pursuant to 42 U.S.C. § 12188 and 28 U.S.C. § 1331 as this action arises under laws of the United States, the FLSA and the ADA.

3. This court also has supplemental jurisdiction over Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

5. All conditions precedent to this Court's jurisdiction have occurred or have been complied with. Specifically:

    a. Plaintiff filed a Charge of Discrimination, number 440-2018-05364, with the Equal Employment Opportunity Commission ("EEOC") on May 17, 2018.

    b. The EEOC issued a Notice of Suit Rights to Plaintiff for said charge on June 1, 2018.

## PARTIES

6. Plaintiff is an individual who was at all relevant times residing in Cicero, Illinois.

7. On information and belief, Defendant is a corporation of the State of Illinois, whose principal place of business is located in Bensenville, Illinois.

8. Plaintiff and Defendant are each a "person" as defined in 29 U.S.C. § 203(a).

9. Defendant is an "employer" as defined in 29 U.S.C. § 203(d), as, on information and belief, it included people acting directly or indirectly in the interest of an employer in relation to Plaintiff when he was an employee.

10. Defendant is also an "employer" as that term is defined by 820 ILCS 105/3(c), as it is a corporation for which one or more persons were gainfully employed on some day within a calendar year.

11. Defendant is also an "employer" as defined in 740 ILCS 174/5, as it is a corporation that has one or more employees in this State.

12. Defendant is an "employer" as defined in 42 U.S.C. § 12111(5)(A), as it is a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

13. At all relevant times, Plaintiff was an "employee" as that term is defined by 29 U.S.C. § 203(e)(1), as he was an individual who was employed by Defendant, an employer.

14. At all relevant times, Plaintiff was also an "employee" as that term is defined by 820 ILCS 105/3, as he was an individual permitted to work by an employer in an occupation.

15. At all relevant times, Plaintiff was also an "employee" as defined in 740 ILCS 174/5, as he was an individual who was employed by an employer.

16. Plaintiff was an "employee" as defined in 42 U.S.C. § 12111(4), as he was an individual employed by an employer.

17. Plaintiff was a "qualified individual" as defined in 42 U.S.C. § 12111(8), as he was an individual who, with or without reasonable accommodation, could perform the essential functions of the employment position that he held.

## BACKGROUND FACTS

18. Plaintiff began working for Defendant on or about August 7, 2017.

19. Plaintiff's most recent position with Defendant was as a security guard.

20. Plaintiff's employment resulted from his response to a Craigslist advertisement placed by Defendant, seeking a full-time security guard at a pay rate of $15.00 per hour.

21. Approximately two weeks after Plaintiff began working for Defendant, he began regularly working more than 48 hours per week.

22. Despite Plaintiff working more than 48 hours per week, Plaintiff was only paid by Defendant for the first 48 hours he worked.

23. When Plaintiff spoke with his supervisors about the pay discrepancy, he was told that he would not receive any extra pay for additional hours worked, despite the fact that the Craigslist posting, by which Defendant had advertised the position, stated a pay rate of $15.00 per hour.

24. Plaintiff was paid the same amount every month and was not compensated for any of the overtime work he performed at one and one-half times his rate of pay, as required by both state and federal law.

25. From approximately August 2017 through November 2017, Defendant internally labeled Plaintiff as a salaried employee, despite the fact that Plaintiff was hired by Defendant as an hourly employee.

26. During or about October 2017, Defendant began requiring Plaintiff to perform new job responsibilities that required excessive walking.

27. The excessive walking was not part of the stated duties for the job position.

28. During or about this time, Plaintiff was injured due to the excessive walking, which resulted in pain in Plaintiff's lower back that became more and more severe.

29. Plaintiff sought the advice of his physician, who allowed Plaintiff to return to work three days later, so long as he was limited to light-duty responsibilities.

30. Plaintiff presented Defendant with a note from his physician requesting this reasonable accommodation.

31. On or about December 9, 2017, Syed Jamal ("Jamal"), another security guard employed by Defendant, struck Plaintiff with a metal-detecting wand.

32. Jamal struck Plaintiff with the wand while scanning Plaintiff at the end of his shift by purposefully striking the wand upward while it was between Plaintiff's legs, thereby striking Plaintiff in the groin.

33. On or about December 10, 2017, Plaintiff reported the incident with Jamal to Natasha (last name unknown), a representative of Defendant's human resources department.

34. On or about December 12, 2017, Jamal struck Plaintiff in the groin again with the metal-detecting wand in a similar manner as described above.

35. Plaintiff reported Jamal's conduct to Adnan Vadria ("Vadria") and Jamal was suspended for approximately one week.

36. Plaintiff did not feel that Vadria or Natasha sufficiently disciplined Jamal, nor did Plaintiff feel that Defendant was doing a sufficient job of protecting him in the workplace.

37. After Plaintiff reported Jamal's behavior, Vadria demoted Plaintiff to a position as a laborer and forced Plaintiff to begin moving boxes, despite his previously requested reasonable accommodation of light-duty responsibilities.

38. On or about December 18, 2017, Plaintiff was injured on the job again due to these new job responsibilities which were contrary to his requested reasonable accommodation.

39. Due to the injuries Plaintiff sustained, Plaintiff began the process of filing a claim for workers' compensation benefits.

40. On or about December 19, 2017, Plaintiff reported Jamal's behavior to the Village of Bensenville police department, due to Plaintiff's belief that Defendant had not taken sufficient action to help protect Plaintiff from Jamal.

41. During or about December 2017, Plaintiff began working less hours due to the injuries he had sustained on the job as a result of his new job responsibilities, which were contrary to his requested reasonable accommodation.

42. As soon as Plaintiff began working less hours, Defendant went back to labeling Plaintiff as an hourly employee, and paying him at the rate of $15.00 per hour.

43. Shortly thereafter, on or about December 21, 2017, a representative of Defendant's human resources department asked Plaintiff to come in and sign paperwork for his workers' compensation claim.

44. When Plaintiff appeared for the requested meeting, instead of presenting him with paperwork related to his workers' compensation claim, Defendant terminated Plaintiff's employment.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

45. Plaintiff incorporates all of the allegations and statements contained in paragraphs 1 through 44 above as if reiterated herein.

46. Defendant intentionally discriminated against Plaintiff on the basis of his disability by demoting Plaintiff and by refusing to provide reasonable accommodations for Plaintiff's disability.

47. Defendant also discriminated against Plaintiff by terminating Plaintiff's employment due to his disability.

48. Defendant also retaliated against Plaintiff because of his disability and/or his requests for reasonable accommodations due to his disability.

49. Defendant, through its employees, agents and/or authorized representatives, knew that its retaliation, termination, and discriminatory treatment of Plaintiff violated the ADA.

50. Defendant's actions were in willful and wanton violation of Plaintiff's rights.

51. During Plaintiff's employment with Defendant and when Plaintiff was terminated by Defendant, he was subjected to discrimination and retaliation for engaging in a legally protected activity, as set forth above.

52. The retaliatory treatment to which Plaintiff was subjected includes, but is not limited to, the instances alleged above. All of the actions of the individuals described herein were undertaken in their capacities as the employees, agents and/or authorized representatives of Defendant.

## COUNT II
## RETALIATORY DISCHARGE

53. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 52 above as if fully reiterated herein.

54. It is a violation of Illinois public policy for an employer to retaliate against an employee for seeking to file, or for filing, a claim under the Illinois Workers' Compensation Act ("IWCA").

55. Plaintiff had a statutory right to file a workers' compensation claim pursuant to the IWCA, 820 ILCS 305/1, *et seq*.

56. Defendant's termination of Plaintiff's employment violates the Illinois public policy which prohibits employers from retaliating against employees for seeking to exercise their lawful rights to pursue claims arising out of work-related injuries under the IWCA.

57. Defendant's harassment and termination of Plaintiff was in retaliation for Plaintiff's filing of a workers' compensation claim.

58. At all relevant times, Plaintiff was allowed by law to file a workers' compensation claim without retaliation by Defendant.

59. As a direct and proximate result of the conduct of Defendant as described above, Plaintiff has suffered damages as herein alleged which include, but are not limited to:

    a. Termination of his employment;

    b. Loss of earnings and employment benefits; and

    c. Stress, aggravation, emotional distress, mental anguish, and similar categories of damages.

## COUNT III
## VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT

60. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 59 above as if fully reiterated herein.

61. At all times relevant, there was in effect in the State of Illinois the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1, *et seq.*

62. Pursuant to the IWA, it is unlawful for an employer to "retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b).

63. In violation of the IWA, Defendant terminated Plaintiff in retaliation for reporting Jamal's conduct to the local police, as described above.

64. Pursuant to the IWA, 740 ILCS 174/30, an employee whose employer has violated the IWA may recover any or all of the following: reinstatement with the same seniority status, back pay with interest, and/or compensation for damages sustained as a result of an employer's violation, including litigation costs, expert witness fees, and reasonable attorneys' fees.

65. As a direct and proximate result of the conduct of Defendant as described above, Plaintiff suffered damages as herein alleged which include, but are not limited to:

  a. Termination from his position;

  b. Loss of earnings and employment benefits; and

  c. Stress, aggravation, emotional distress, mental anguish, and similar categories of damage.

## COUNT IV
## VIOLATION OF THE ILLINOIS MINIMUM WAGE ACT

66. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 65 above as if fully reiterated herein.

67. At all times relevant, there was in effect in the State of Illinois the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*

68. Pursuant to the IMWL, "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." 820 ILCS 105/4a(1).

69. As a direct and proximate result of the conduct of Defendant as described above, Plaintiff has suffered damages, due to Defendant's failure to properly pay Plaintiff at a rate of 1 ½ times Plaintiff's regular hourly rate for all hours worked over 40 hours during any given workweeks.

70. Defendant's refusal to pay Plaintiff at a rate not less than 1 ½ times the regular rate at which he was employed for all hours worked over 40 hours during various workweeks violated the IMWL.

71. The IMWL provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's

fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12(a).

72. The pattern, practice and uniform administration of unlawful corporate policies regarding employee compensation as alleged herein creates an entitlement to recovery by Plaintiff for damages and wages owed, and for penalties, interest, costs and attorneys' fees, in amounts to be proven.

## COUNT V
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

73. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 72 above as if fully reiterated herein.

74. The Fair Labor Standards Act ("FLSA") provides that "no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

75. Defendant failed to compensate Plaintiff at a rate of 1 ½ times his regular wage for time worked in excess of forty hours per week during many pay periods throughout his employment with Defendant. In fact, Defendant failed to compensate Plaintiff at all for many of his hours worked during numerous pay periods.

76. Defendant, by its failure to fully compensate Plaintiff for overtime as set forth above, violated the FLSA, including but not limited to, 29 U.S.C § 207.

77. Defendant acted willfully and knew, or showed reckless disregard as to whether, its conduct was prohibited by the FLSA.

78.     The FLSA also provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" 29 U.S.C § 216(b).

79.     The pattern, practice and uniform administration of unlawful corporate policies regarding employee compensation as alleged herein creates an entitlement to recovery by Plaintiff for damages and wages owed, and for penalties, interest, costs and attorneys' fees, in amounts to be proven.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JESUS NEVAREZ, respectfully prays this Honorable Court enter judgment against Defendant, MIDWEST GOODS INC. d/b/a MIDWEST DISTRIBUTION ILLINOIS, as follows:

a.  Declaring the Defendant's practices complained of herein unlawful and in violation of the IWA, the IMWA, the FLSA, the ADA, and Illinois common-law retaliatory discharge;

b.  Permanently enjoining Defendant, its agents, successors, officers, employees, representatives, attorneys and those acting in concert with it or them from engaging in the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

c. Ordering modification or elimination of the practices, policies, customs and usages set forth herein and all other such practices shown to be in violation of applicable law, ensuring Defendant will not continue to engage in practices of withholding overtime wages, retaliating against employees who engage in protected whistleblowing activities, or retaliating against employees who engage in protected activities such as filing for workers' compensation and requesting reasonable accommodations for disabilities;

d. Immediately assigning Plaintiff to the position he would now be occupying but for the unlawful practices of Defendant, and adjusting the wage rate, salaries, bonuses and benefits for Plaintiff to those which he would have received but for the unlawful practices of Defendant, or awarding Plaintiff front-end and future pay;

e. Compensating and making Plaintiff whole for all earnings, wages, bonuses and other benefits that Plaintiff would have received but for the unlawful practices of Defendant;

f. Compensating and making Plaintiff whole for all other damages Plaintiff incurred as a result of the discriminatory practices of Defendant;

g. Awarding Plaintiff all unpaid wages at a rate not less than 1 ½ times the regular rate at which Plaintiff was employed for all hours worked over 40 hours during any workweeks, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

h. Awarding Plaintiff all unpaid wages at a rate not less than 1 ½ times the regular rate at which Plaintiff was employed for all hours worked over 40

        hours during any workweeks, plus the statutory 2% per month penalties stipulated by 820 ILCS 105/12(a) and 820 ILCS 115/14(a);

i. Awarding Plaintiff all witness fees, court costs and other litigation costs incurred in this Action, including reasonable attorneys' fees;

j. Awarding Plaintiff punitive damages for Defendant's conduct; and

k. Granting such other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of any attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECTFULLY SUBMITTED,

JESUS NEVAREZ

By: /s/ David B. Levin
Attorney for Plaintiff
Illinois Attorney No. 6212141
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, Illinois 60062
Phone: (224) 218-0882
Fax: (866) 633-0228
dlevin@toddflaw.com